RECEIVED - USDC -NH
2024 APR 29 PM3:55

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:23-cr- |
| | ) | |
| LUKE CZEKALSKI | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, Jane E. Young, United States Attorney for the District of New Hampshire, and the defendant, Luke Czekalski, and the defendant's attorney, Michael Iacopino, Esquire, enter into the following Plea Agreement:

1. <u>The Plea and The Offense</u>.

The defendant agrees to waive his right to have this matter presented to a grand jury and plead guilty to an Information charging him with the possession of firearms which were not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in Section 6 of this agreement.

2. <u>The Statutes and Elements of the Offense</u>.

Title 26, United States Code, Section 5861(d) provides, in pertinent part:

It shall be unlawful for any person –
(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record;

26 U.S.C. § 5681.  The definition of a "firearm" is set forth in 26 U.S.C. § 5845 and includes both a "machinegun" and "any silencer (as defined in section 921 of title 18, United States

code)."   A "machinegun" is further defined in § 5845(b) as "any weapon which shoots, is

designed to shoot, or can be readily restored to shoot, automatically more than one shot, without

manual reloading, by a single function of the trigger."   26 U.S.C. § 5845(b).   Section 921 of

Title defines a "firearm silencer" as meaning "any device for silencing, muffling, or diminishing

the report of a portable firearm, including any combination of parts, designed or redesigned, and

intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part

intended only for use in such assembly or fabrication."

 The defendant understands that the offense has the following elements, each of which the

United States would be required to prove beyond a reasonable doubt at trial:

 <u>First</u>, that defendant knowingly possessed the firearms described in the Information on or

about the date charged;

 <u>Second</u>, that the firearms were of a kind that is required to be registered in the National

Firearms Registration and Transfer Record.

 <u>Third</u>, that defendant knew that the firearms had these characteristics: i.e., that three

firearms were machineguns and five were silencers, as those terms are defined above; and

 <u>Fourth</u>, that the firearms were not registered to defendant in the National Firearms

Registration and Transfer Record.

 *See* Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District

of Maine Internet Site Edition, 2023 Revisions, Instruction § 4.26.5861(d) (last updated January

25, 2019).

 3. <u>Offense Conduct</u>.

 The defendant stipulates and agrees that if this case proceeded to trial, the government

would introduce evidence of the following facts, which would prove the elements of the offense

beyond a reasonable doubt:

On November 30, 2022, New Hampshire state parole officers conducted an unannounced visit at the defendant's residence in Jaffrey, New Hampshire, at approximately 7:00pm.  At the time, the defendant had been on parole since approximately June 2016 following a November 2013 conviction for aggravated felonious sexual assault for which he had received a sentence of 3 to 12 years in New Hampshire state prison.  One of the defendant's parole conditions (Standard Rule #9) provided that he would "permit the parole officer to visit my residence at any time for the purpose of examination and inspection in the enforcement of the conditions of parole, and submit to searches of my person, property and possessions as requested by the parole officer."  The defendant lived by himself at the Jaffrey residence.

While the parole officers conducted their search, the defendant pointed the officers to three plastic bins in the basement that contained firearms, ammunition, loaded magazines, as well as body armor and other miscellaneous items.  At that point, the parole officers called the Jaffrey Police Department for assistance and detained the defendant.  Jaffrey Police removed the bins, secured the residence, and returned to the police station to prepare a search warrant for the residence and conduct an inventory of the items in the bins.

The removed bins were found to contain eight (8) firearms and (5) five homemade silencers in addition to assorted firearm ammunition.  After Jaffrey Police sought and obtained a state search warrant for the defendant's residence, they identified additional miscellaneous weapons parts, firearm magazines, and other evidence of manufacturing of firearms in the basement area, including a drill press with shavings around it, a small welder, and two "jigs" that are used to machine 80% lowers for glock-style pistols and AR-15 style rifles.

The New Hampshire Forensic Laboratory and the Bureau of Alcohol, Tobacco, Firearms

and Explosives ("ATF") later examined the seized firearms and silencers.   All of the firearms

appeared to be privately made and did not bear any visible serial numbers.   Three of the

firearms—identified by ATF Exhibit Numbers #44, #48, and #49—displayed full automatic

firing capabilities during test fires, thus making them "machineguns" under federal law.   All of

the five silencers also were privately made and did not bear any visible serial numbers.   These

included modified oil filters, a flashlight, and other unknown items that had been modified in

order to silence, muffle, or diminish the report of a portable firearm.   As "machineguns" and

"silencers," each of these items was required to be registered in the National Firearms

Registration and Transfer Record.

ATF performed a records check of the National Firearms Registration and Transfer

Record and found there were no registrations associated with the defendant for any of the above

identified items.

4.   Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offense are:

A.   A maximum prison term of 10 years (26 U.S.C. § 5871);

B.   A maximum fine of $10,000 (26 U.S.C. § 5871);

C.   A term of supervised release of not more than 3 years (18 U.S.C.
§ 3583(b)).   The defendant understands that the defendant's failure to
comply with any of the conditions of supervised release may result in
revocation of supervised release, requiring the defendant to serve in prison
all or part of the term of supervised release, with no credit for time already
spent on supervised release; and

D.   A mandatory special assessment of $100 for the sole count of conviction, at or
before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)).

5.   Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case

- 4 -

and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

    A.    Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

    B.    Respond to questions from the Court;

    C.    Correct any inaccuracies in the pre-sentence report;

    D.    Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. <u>Sentencing Stipulations and Agreements</u>.

Pursuant to Fed. R. Crim. 11(c)(1)(B), the United States and the defendant stipulate and agree to the following:

    (a)    The United States will recommend that the defendant be sentenced at the bottom of the applicable advisory sentencing guidelines range as determined by the Court.

The defendant understands that the Court is not bound by the foregoing agreements and,

- 5 -

with the aid of a pre-sentence report, the Court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of those agreements, such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7.   <u>Acceptance of Responsibility</u>.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.   Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B.   Challenges the United States' offer of proof at any time after the plea is entered;

C.   Denies involvement in the offense;

D.   Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.   Fails to give complete and accurate information about his financial status

- 6 -

to the Probation Office;

F.      Obstructs or attempts to obstruct justice, prior to sentencing;

G.      Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.      Fails to appear in court as required;

I.      After signing this Plea Agreement, engages in additional criminal conduct; or

J.      Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8.   <u>Waiver of Trial Rights and Consequences of Plea.</u>

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.  The defendant also understands that he has the right:

A.   To plead not guilty or to maintain that plea if it has already been made;

B.   To be tried by a jury and, at that trial, to the assistance of counsel;

C.   To confront and cross-examine witnesses;

D.   Not to be compelled to provide testimony that may incriminate him; and

E.   To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9.   <u>Acknowledgment of Guilt; Voluntariness of Plea</u>.

The defendant understands and acknowledges that he:

A.   Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.   Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C.   Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.   Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.   Is completely satisfied with the representation and advice received from his undersigned attorney.

10.   <u>Scope of Agreement</u>.

The defendant acknowledges and understands that this Plea Agreement binds only the

- 8 -

undersigned parties and cannot bind any other non-party federal, state or local authority. The

defendant also acknowledges that no representations have been made to him about any civil or

administrative consequences that may result from his guilty plea. The defendant understands

such matters are solely within the discretion of the specific non-party government agency

involved. The defendant further acknowledges that this Plea Agreement has been reached

without regard to any civil tax matters that may be pending or which may arise involving the

defendant.

      11.  <u>Collateral Consequences</u>.

      The defendant understands that as a consequence of his guilty plea he will be adjudicated

guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right

to vote, to hold public office, to serve on a jury, or to possess firearms.

      The defendant understands that, if he is not a citizen of the United States, his guilty plea

to the charged offense will likely result in him being subject to immigration proceedings and

removed from the United States by making him deportable, excludable, or inadmissible. The

defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending

his naturalization, which would likely subject him to immigration proceedings and possible

removal from the United States. The defendant understands that the immigration consequences

of this plea will be imposed in a separate proceeding before the immigration authorities. The

defendant wants and agrees to plead guilty to the charged offense regardless of any immigration

consequences of this plea, even if this plea will cause his removal from the United States. The

defendant understands that he is bound by his guilty plea regardless of any immigration

consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty

plea and to his sentence based on any immigration consequences and agrees not to seek to

- 9 -

withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

12.  Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the information in this case.

The defendant understands and agrees that, if after entering this Agreement, he fails specifically to perform or fulfill completely each one of his obligations under this Agreement, fails to appear for sentencing, or engages in any criminal activity prior to sentencing, he will have breached this Agreement.

If the United States, in its sole discretion, and acting in good faith, determines that the defendant committed or attempted to commit any further crimes, failed to appear for sentencing, or has otherwise violated any provision of this Agreement, the United States will be released from its obligations under this Agreement, including, but not limited to, any agreement it made to dismiss charges, forbear prosecution of other crimes, or recommend a specific sentence or a sentence within a specified range. The defendant also understands that he may not use his breach of this Agreement as a reason to withdraw his guilty plea or as a basis to be released from his guilty plea.

13.  Waivers.

A.  Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.    His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.    The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B.    Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.   By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.    His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.    The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

- 11 -

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

14.  <u>No Other Promises</u>.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15.  <u>Final Binding Agreement</u>.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16.     Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this

Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and

void and no part of it may be enforced.

JANE E. YOUNG
United States Attorney

Date:  4/29/2024                    By: _____

Charles L. Rombeau
Assistant United States Attorney
NY Bar #4326500
53 Pleasant St., 4th Floor
Concord, NH 03301
603-225-1552

The defendant, Luke Czekalski, certifies that he has read this 13-page Plea Agreement
and that he fully understands and accepts its terms.

Date:  3/20/2024                    _____

Luke Czekalski, Defendant

I have read and explained this 13-page Plea Agreement to the defendant, and he has
advised me that he understands and accepts its terms.

Date:       4/5/2024                /s/Michael J. Iacopino
_____

Michael Iacopino, Esquire
Attorney for Luke Czekalski

- 13 -